THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| WILLIS PELTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.:_____ |
| ) | |
| LOWE'S HOME CENTERS, LLC, ) | JURY DEMAND |
| d/b/a LOWE'S, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**COMPLAINT WITH DEMAND FOR JURY TRIAL**

**COMES NOW** Plaintiff, Willis Pelton (hereinafter "Plaintiff"), by and through his undersigned counsel, and hereby files this lawsuit against Defendant, Lowe's Home Centers, LLC, d/b/a Lowe's (hereinafter "Defendant" or "Lowe's" or "employer"), and states as follows:

**JURISDICTION AND VENUE**

1. This is an action by Plaintiff, Willis Pelton, for compensatory and liquidated damages, as well as declaratory, and injunctive relief, under the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 *et seq.*) ("ADEA"), to redress injury caused by Defendant's retaliation against him for opposing it as a plaintiff in another case pending in this Court, *Bartholomew et al. v. Lowe's*, No. 2:19-cv-695-JLB-MRM ("*Bartholomew v. Lowe's*").

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, the ADEA and 28 U.S.C. § 1367. Declaratory, injunctive, legal and equitable relief is sought pursuant to the ADEA set forth above to include attorneys' fees, costs, and damages.

3. Defendant employs at least twenty (20) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the relevant calendar years.

4. Venue is proper in the Fort Myers Division of the Middle District of Florida (28 U.S.C. § 89(b); § 1391(b); 1404(a)), because Defendant does business in this district, and, in the interests of convenience.

5. On December 3, 4, and 7, 2020, Plaintiff requested that Defendant consent to venue in this district for the convenience of the parties and witnesses. Defendant has yet to respond with its position or consent. Plaintiff will alert the Court once apprised of Defendant's position.

6. Defendant's principal place of business/headquarters is in or near Mooresville, North Carolina, and it is corporation conducting business in the state of Florida, including in most if not all of the Florida counties of the Middle District of Florida (28 U.S.C. § 89(b)), including, for example, in Collier County, 599 9th Street North, Naples, Florida 34102.

7. Plaintiff currently resides in Summerville, South Carolina; however, he is planning on moving to Arizona sometime in 2021.

8. All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

9. On or about August 3, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 415-2020-01365. A true and correct copy of Plaintiff's charge is attached hereto as Exhibit "A".

10. On or about September 10, 2020, the EEOC issued a Notice of Right to Sue letter to Plaintiff and suit has been commenced within ninety (90) days of receipt of the letter, a true and correct copy of which is included in Exhibit "B".

**GENERAL FACTUAL ALLEGATIONS**

11. Plaintiff is fifty-five (55) years old.

12. Plaintiff is a former employee, sales specialist (or similar iteration), of Lowe's in Summerville, South Carolina (1207 North Main Street, Summerville, South Carolina, 29483 (a/k/a Store 0358)).

13. Plaintiff was hired by Defendant in or around September 2003.

14. In August 2019, Lowe's notified Plaintiff his Spiff/Commission Allowance ("SCA") was ending, effective February 1, 2020. *Bartholomew v. Lowe's* (D.E. 49, ¶¶ 39-46).

15. On August 6 or 7, 2020, around 6:30 a.m., Plaintiff received a call on his cell at home from his Store Manager, Brian Pine ("Pine"), who alerted him that the SCA was ending.

16. Plaintiff was not paid for his time incurred speaking to Pine.

17. On September 20, 2019, Plaintiff opted into the *Bartholomew v. Lowe's*, which includes an ADEA claim, against Lowe's seeking to enjoin Lowe's from ending the SCA and/or for damages following its elimination on February 1, 2020. *Bartholomew*, (D.E. 1-5).

18. Plaintiff worked for Lowe's in this position until his retaliatory termination on June 20, 2020 as described herein.

19. Plaintiff's hourly rate of pay at the time of his termination was $20.107 per hour.

20. Plaintiff's immediate supervisor prior to his termination was Mr. Randy Cutrell ("Cutrell").

21. Cutrell's position is Sales Manager for Store 0358.

22. Cutrell's immediate supervisor was Mr. Jeff Roberts ("Roberts").

23. Roberts's position is Department Manager.

24. Roberts' immediate supervisor was Pine.

25. Pine is Lowe's Store Manager for Store 0358.

26. On or about May 30, 2020, at work at Store 0358, Plaintiff asked Cutrell for an extended lunch break because a family pet was dying, and Plaintiff wanted to give the pet its last meal, with his wife.

27. Cutrell agreed to Plaintiff's extended lunch break.

28. Plaintiff also informed Roberts of his extended lunch break and that Cutrell agreed.

29. Plaintiff also informed employees in the neighboring departments, including the paint department about his extended break.

30. Plaintiff left for lunch and was absent from work around one hour and forty-five minutes.

31. Plaintiff returned to work afterward to continue and finish his scheduled shift (through 9 PM).

32. Upon his return, Plaintiff was distraught, to the point where other employees commented about his despondent demeanor, and at least one offered their condolences.

33. That afternoon, while at work, Plaintiff realized he forgot to clock out for lunch.

34. After Plaintiff realized he forgot to clock out, he clocked out, and continued working.

35. Plaintiff clocked-out to ensure that he was not being paid for the lunch hour he did not work.

36. Plaintiff worked that afternoon / evening while he was punched out.

37. Plaintiff clocked out accidentally for an hour, not the hour and forty-four minutes he had been absent.

38. That afternoon / evening, around the time when he clocked back in 45 minutes early, Plaintiff's spouse notified him that his pet was about to die.

39. Plaintiff did not intentionally err by clocking back in 45 minutes early, it was an accident and effectively due to stress from his pet dying.

40. Plaintiff worked from May 31 to June 8, 2020 on his regular schedule.

41. No one from Lowe's said anything to Plaintiff during week-plus about this time-punch issue.

42. Plaintiff had never been disciplined for any time-punch issue previously by Lowe's.

43. On June 9, 2020, Plaintiff went on a pre-approved vacation through June 19, 2020.

44. Plaintiff returned to work on June 20, 2020.

45. Plaintiff was running a few minutes late to work that day.

46. Plaintiff called Cutrell in advance to let him know.

47. Cutrell told Plaintiff to find him as soon as he arrived at work.

48. Plaintiff arrived and found Cutrell.

49. Plaintiff told Cutrell he was glad to be back to work after vacation.

50. Cutrell asked Plaintiff to go with him to the Store Manager's office.

51. No one else was present, except Plaintiff and Cutrell.

52. Cutrell told Plaintiff, "I'm not going to beat around the bush with you buddy."

53. Cutrell told Plaintiff, on May 20, at 5:20 p.m., I was looking for you and couldn't find you anywhere in the store."

54. Cutrell told Plaintiff "I checked to see if you were clocked out and couldn't find you anywhere. I had to turn this into Lowe's HR."

55. Cutrell told Plaintiff he committed "time theft" from Lowe's.

56. Cutrell told Plaintiff that "it was a terminable offense."

57. Cutrell told Plaintiff "that you are being terminated" effective immediately.

58. Plaintiff was shocked by this news, including because he would never steal time from Respondent, quite the contrary.

59. Plaintiff attempted to respond to Cutrell's statements.

60. As a sixteen-year employee of Respondent, Plaintiff told Cutrell he would never intentionally attempt to steal anything from it, including no time theft.

61. Plaintiff told Cutrell that if there was a day that there could have been an issue with clocking-in and out, it was likely the day his family pet died, which was not May 20th.

62. It then occurred to Plaintiff that he had forgotten to credit Lowe's with the approximately 45 minutes from the day the pet died (May 30, 2020), and if there was an error in his time, it would have been that day he was distraught.

63. Plaintiff told Cutrell the same.

64. Plaintiff then reminded Cutrell that he gave Plaintiff permission to take a long lunch on May 30, 2020.

65. Cutrell denied this conversation ever occurred.

66. Cutrell denied that he ever gave Plaintiff permission.

67. Plaintiff told Cutrell he was wrong.

68. Cutrell lied to Plaintiff.

69. Plaintiff also told Cutrell the theft allegations are false and/or if there was an error; it was an accident and a good faith mistake.

70. Plaintiff told Cutrell he attempted to correct the issue immediately after he had discovered it on May 30th.

71. Plaintiff was happy to work the approximately 45 minutes he alleged he failed to work, and told Cutrell as such.

72. Plaintiff had never been previously disciplined by Respondent for "time theft" or similar, nor had he actually engaged in any "time theft," be it on May 20, 30, or otherwise.

73. Cutrell's confusion about the date of the time punch issue underscores the reality of the pretextual reasons and that Lowe's purported legitimate reason is not legitimate and is, in reality, retaliatory.

74. Over Plaintiff's seventeen years working for Lowe's, there were many occasions where Plaintiff would work several minutes or more, here or there, while working off the clock, including, for example, to assist customers on his way to and from punching in and out.

75. Underscoring the reality of Defendant's pretextual reasons, Defendant did not credit Plaintiff (nor others) for working on August 6 or 7, 2019 during the time when Pine called him at home at 6:30 a.m. while Plaintiff was not punched in.

76. Underscoring the reality of Defendant's pretextual reasons, after seventeen years of employment, Defendant terminated Plaintiff for a time-punch error of approximately 45 minutes or $15.08 (45/60 X $20.107).

77. Defendant's purported reason for termination is false and/or a pretext for unlawful retaliation.

78. Defendant and its managers have been understanding with employees for minor mistakes, including with time punch issues, for years.

79. Other employees of Lowe's, including those working at Plaintiff's Store, committed worse time errors than Plaintiff and were not terminated and/or received an investigation that included their input.

80. Plaintiff of course, was happy to work 45 minutes off the clock (or whatever amount of time was in error based on the punch clock) to make up for the good faith mistake; however, per Cutrell, the termination decision was final.

81. There was no investigation (or no proper investigation) into the time-punch issue, at least none that Plaintiff is aware of, including because Cutrell lied to Plaintiff's face about asking for time off on May 30th (and because there was no time-punch issue on May 20, 2020).

82. There was no investigation (or no proper investigation) into the time-punch issue, at least none that Plaintiff is aware of, including because even though Plaintiff raised reasonable concerns about the purported reason for his termination, no one from Defendant ever asked for input from Plaintiff.

83. There was no investigation (or no proper investigation) into the time-punch issue, at least none that Plaintiff is aware of, including because even though Defendant is aware of Plaintiff's status as a plaintiff in *Bartholomew v. Lowe's*, there was no witness present during the termination meeting despite Cutrell mentioning "HR" during the meeting and the fact it occurred weeks after the alleged incident and after Plaintiff returned from vacation.

84. Plaintiff believes, if there was an investigation by Respondent that had received any input from him, the results of the investigation would have been different, or at least, compliant with Defendant's internal rules about investigations (or similar to how others were treated concerning investigations) and more fair to him, rather than being retaliated against after vacation.

85. Plaintiff also believes that Pine's non-appearance at his termination meeting was intentional by Respondent and that Pine knew of, recommended, made, and/or participated in the termination decision, as well as others above Pine in Lowe's chain-of-command.

86. Any purported legitimate reason given by Defendant for its actions, is, in reality, a pretext for unlawful retaliation.

87. Any claim by Defendant that it did conduct a proper investigation is a sham and/or not worthy of belief.

88. Plaintiff has sufficient evidence and/or will present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that his engagement in protected activity, participation in *Bartholomew v. Lowe's* opposing unlawful elimination of the SCA under the ADEA, was, in fact, the real reason why Plaintiff was terminated from employment.

89. Defendant is or may be liable to Plaintiff under the "cat's paw" theory of vicarious liability and, to the extent necessary, alleges that it is so liable.

### Count I – ADEA Retaliation - Termination[1]

90. Plaintiff realleges all of the preceding paragraphs of this complaint.

91. Plaintiff has completed all necessary pre-requisites to bringing his claims under the ADEA.

92. Plaintiff is a member of a protected class protected by the ADEA, over age 40.

93. Plaintiff was qualified for his position.

94. Plaintiff engaged in and participated in a statutorily protected activity as a plaintiff in *Bartholomew v. Lowe's*.

95. Plaintiff suffered an adverse employment action(s), termination without any warning on June 20, 2020.

96. Prior to June 20, 2020, Plaintiff had never received any warning for time-theft or any time-punch issue.

---

[1] To the extent necessary, Plaintiff's claims herein are pled in the alternative.

97. Defendant damaged and retaliated against Plaintiff in the terms and conditions of his employment, by disciplining him unfairly, unjustly, inaccurately, and inconsistently after he joined *id.*, by not conducting an investigation (or a proper investigation) and by terminating his employment.

98. Defendant did not terminate other employees for a first-time violation of alleged time-punch issues and/or time-theft, instead they received a warning or other non-termination discipline.

99. There is or are a casual connection(s) between Plaintiff's complaint about SCA elimination under the ADEA and his termination.

100. Any purported legitimate reason for his termination given by Defendant, is, in reality, a pretext for its unlawful, retaliatory termination.

101. As a result of the aforementioned conduct, Defendant violated the ADEA.

102. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in discipline and termination after he joined in a lawsuit, resulting in his suffering injury and being damaged.

103. Defendant has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

104. Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendant.

105. As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, liquidated damages, and attorneys' fees and costs. These damages should and necessarily

include the amount of monies Plaintiff had withdrawn early from his retirement funds arising from Defendant's acts and omissions.

106. Plaintiff is not seeking double recovery from this lawsuit and the *Bartholomew v. Lowe's* case.

107. In *id.*, Plaintiff is seeking recovery of the SCA monies retroactively and prospectively, whereas here is seeking reinstatement to a Lowe's Store (in South Carolina and/or in Arizona by the time of the resolution of this lawsuit), back-pay damages, liquidated damages, interest, and attorney's fees and costs from this lawsuit, and not SCA related damages.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Grant a permanent injunction enjoining Defendant its officers, successors, assigns and all persons in active concert or participation with it, from engaging in retaliatory practices in violation of the law, as well as appropriately fashioned equitable relief aimed at preventing future discrimination and retaliation;

(b) Award Plaintiff judgment against Defendant for compensatory and/or liquidated damages as determined by the trier of fact;

(c) Award Plaintiff all restitution and other damages, including pre- and post-judgment interest, for the benefits he would have received absent the retaliatory treatment;

(d) Enter judgment for liquidated and/or punitive damages against Defendant,

(e) Reinstate Plaintiff to his previous position at a Lowe's Store near his home in South Carolina or, more likely, his future home in Arizona at the same rate of pay; and

(e) Award all reasonable attorneys' fees and costs incurred in connection with this action; and any other further relief as justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 8th of December, 2020.

//s//<u>Michael G. Green II, Esq.</u>
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email: michael@salaslawfirmpa.com
Fla. Bar. No. 60859

//s//<u>John P. Salas, Esq.</u>
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email: jp@salaslawfirmpa.com
Fla. Bar. No. 87593

## SERVICE LIST

McGuireWoods LLP
50 North Laura Street, Suite 3300
Jacksonville, Florida 32202
Cameron G. Kynes, Esq.
Email: ckynes@mcguirewoods.com